IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2001 Session

## SANDRA HARRIS v. JOHN W. HARRIS, JR.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 87987 R.D.    Karen R. Williams, Judge**

---

**No. W2000-03058-COA-R3-CV - Filed November 29, 2001**

---

This case involves a dispute over child support. After the mother and father divorced, the father agreed to pay child support. Subsequent to several hearings regarding many different issues, the mother sued the father to collect child support arrearage. At trial, the father argued that the mother should not be heard because of an earlier contempt charge. The father also argued that any arrearage should be set-off by his earlier judgment against the mother. The trial court found the father was in arrears in the amount of $21,753.00 and granted judgement to the mother. The father appeals this judgment. We affirm the trial court's decision and remand for a calculation of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

John W. Harris, Jr., *Pro se*.

Alan S. Kleiman, Memphis, Tennessee, for the appellee, Sandra Harris.

**OPINION**

After a brief marriage that included the birth of their only child, John W. Harris and Sandra O. Harris divorced in July 1983. By agreement, Ms. Harris retained primary custody of the child. The agreement provided that Mr. Harris was to have visitation rights at least once a month. The agreement further provided that Mr. Harris would pay $250 each month as child support.

Shortly after the divorce, Ms. Harris moved to Indiana. As a result, Mr. Harris petitioned the court for specific visitation. In ruling on Mr. Harris's motion, the court stated that the child would visit Mr. Harris in Memphis at Ms. Harris's expense every other month. On the intervening months when the child would not come to Memphis, the court permitted Mr. Harris to visit the child in

Indiana. The parties, however, were unable to comply with this arrangement, and in February 1985, the court held Ms. Harris in contempt.

Sometime after the court held Ms. Harris in contempt, Ms. Harris filed a Title IV-D URESA petition in Shelby County Juvenile Court. In 1988, the circuit court which had granted the divorce, ruled that the juvenile court lacked jurisdiction over the matter[1] and went on to state that "since Ms. Harris was held in contempt of court on February 22, 1985, she should come into court and purge herself of contempt before any affirmative action should be rendered in this cause."

The couple's post marital problems continued, and in 1989, the court awarded Mr. Harris a judgment in the amount of $8,139.00. The court based this award on a Special Master's report in 1985. In the report, the Special Master determined that Ms. Harris converted a portion of Mr. Harris's personal property to her own use in violation of the divorce decree. Ms. Harris challenged the award, asserting that the court did not have jurisdiction, but the court affirmed its jurisdiction and refused to set aside the award.

The final action in this long line of motions, hearings, and orders was a petition for contempt filed by Ms. Harris in February 1999. In her petition, Ms. Harris asserted that Mr. Harris was $31,125.00 behind in child support payments. Ms. Harris sought to have the court to enforce the payment of this arrearage and to award Ms. Harris attorney's fees. Mr. Harris filed an answer and a motion to dismiss, stating that Ms. Harris should not be allowed to proceed in her action until she purged herself of the earlier contempt charge. Mr. Harris also argued that the judgment against Ms. Harris should be used to set-off any amount of child support to which he is held in arrears.

After three hearings on the matter, the court entered an order granting Ms. Harris's petition for contempt in part and denying Mr. Harris's motion to dismiss.[2] The court held Mr. Harris in arrears in the amount of $21,753.00. The arrearage awarded to Ms. Harris reflected the amount owed by Mr. Harris from the date of the divorce until September 30, 1999. The amount reflected credit on behalf of Mr. Harris due to money paid by the Social Security Administration to the child from February 1999 until September 1999. Additionally, the court refused to set off the arrearage due to the earlier judgment against Ms. Harris, stating that the "child support belongs to the child. It is not an asset of the Mother, although the Mother has complete control of the funds." Finally, the court awarded Ms. Harris $3000.00 in attorney's fees.

Mr. Harris appeals the ruling of the trial court. The issues, as we perceive them, are:

---

[1] The order entered in the circuit court contained the following language:

"It is the opinion of this Court that the Juvenile Court of Shelby County, Tennessee does not have jurisdiction to hear and determine the petition of or on behalf of Sandra O. Harris for child custody, child support, child visitation or any other matters that were litigated in the above cause, since this Court has not relinquished jurisdiction."

[2] In these hearings, and on subsequent matters including this appeal, Mr. Harris appeared *pro se*.

I.      Whether the trial court erred by hearing Ms. Harris's petition for contempt.

II.     Whether the trial court erred by refusing to use the earlier judgment against Ms. Harris to set off the child support arrearage.

III.    Whether Mr. Harris received proper credit for the arrearage.

IV.     Whether the trial court's order violated the Fourteenth Amendment of the United States Constitution by denying equal protection to Mr. Harris.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

In his first issue, Mr. Harris argues that the trial court erred in hearing Ms. Harris's petition for contempt because of the court's two rulings in 1985 and in 1988. The court held Ms. Harris in contempt in the 1985 ruling and stated in the 1988 ruling that Ms. Harris "should come into court and purge herself of contempt before any affirmative action should be rendered in this cause." We do not find Mr. Harris's argument to be persuasive.

In addition to the court's 1988 order, Mr. Harris relies on ***Segelke v. Segelke***, 584 S.W.2d 211, 214 (Tenn. Ct. App. 1978) where we quoted the following from Gibson's Suits in Chancery:

> He who seeks Equity must do Equity, and he who has done inequity shall not have Equity. Therefore, it is a general rule that a party who is in contempt will not be heard by the Court, when he wishes to make a motion or ask a favor; . . . . His first duty is to purge his contempt, and the only steps he can take are to apply to the Court (1) to set aside the proceedings against him because they are irregular, and (2) to be discharged on the ground that he has purged himself of his contempt, by doing the act for the non-performance of which the contempt was incurred, and confessing judgment for the costs occasioned by his contumacy. Gibson's Suits in Chancery, 5[th] ed., Vol. 2, § 970, p. 195.

While we stand by this general principle of law, it is inapplicable to the present situation. In 1991, the Tennessee Supreme Court held that equitable defenses cannot be used to "defeat the right of a child to receive parental support." ***Rutledge v. Barrett***, 802 S.W.2d 604, 607 (Tenn. 1991). In ***Rutledge***, the obligor defended a suit for child support arrearage asserting that the obligee had unclean hands based on her failure to comply with court-ordered visitation. *Id.* at 605. The court stated that "the custodial parent's conduct cannot extinguish the non-custodial parent's legal responsibility." *Id.* at 607. The court further stated that child support is for the benefit of the child

and concluded that the parent with the equitable defense cannot unilaterally suspend support payments and then seek to avoid the arrearage. *Id.*

The principal announced in *Rutledge* applies to the present case. Mr. Harris seeks to avoid paying the child support that is in arrearage because of Ms. Harris's previous contempt charge. Mr. Harris argues that because Ms. Harris has done nothing to purge her contempt, Ms. Harris should not be allowed to use the courts to collect the arrearage. As in *Rutledge*, this equitable defense will not defeat Ms. Harris's claim.[3] Ms. Harris's previous acts should not affect the child's right to support. Therefore, we hold that the trial court did not err in allowing Ms. Harris to maintain an action against Mr. Harris for the child support arrearage.

We now turn to Mr. Harris's second issue. Mr. Harris asserted in the court below that Ms. Harris still owed money on the 1989 judgment for the conversion of Mr. Harris's property.[4] The trial court refused to allow Mr. Harris to set-off the amount of child support in arrears by this 1989 judgement. Mr. Harris argues that the trial court erred by refusing to set-off the arrearage. We disagree and hold that the trial court properly refused to set-off the arrearage by the 1989 judgment against Ms. Harris.

While there are no reported opinions in Tennessee addressing this question, we addressed this issue in *Oliver v. Oczkowicz*, No. 89-396-II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990) (*no perm. app. filed*). In *Oliver*, the trial court found that Mr. Oczkowicz owed $9,295.15 in back child support to Ms. Oliver but that he was entitled to a credit against his child support arrearage in the amount of $4,754.65, which included certain expenditures made by Mr. Oczkowicz for the benefit of the parties' children, certain expenses incurred by Mr. Oczkowicz in conjunction with his visitation with the children, and a personal loan that Mr. Oczkowicz had made to Ms. Oliver. *Id.* at *1-2. On appeal, this Court first concluded that Mr. Oczkowicz was entitled to off-set his child support arrearage by voluntary payments made by him for the children's necessaries that were not being provided by Ms. Oliver. *Id.* at *2. Additionally, however, we concluded that Mr. Oczkowicz was not entitled to off-set his child support arrearage by amounts owed by Ms. Oliver to Mr. Oczkowicz that were unrelated to the child support order because to allow such a set-off "would amount to requiring the children to pay the debts of the custodial parent."*Id.* at *2. Finally, this

---

[3]Additionally, we note that we have stated on several occasions that the trial court has discretion when deciding whether to hear a case brought by a party who remains in contempt of court. *Segelke*, 584 S.W.2d at 214; *see also Hoyle v. Wilson*, 746 S.W.2d 665, 673-74 (Tenn. 1988) (stating that the trial court's refusal to aid someone in contempt is "within the discretion afforded a trial court . . . which exercise of discretion will not be reversed absent some abuse . . . . ); *Ball v. Ball*, No. 02A01-9709-GS-00239, 1999 WL 95977, at * 4 (Tenn. Ct. App. Feb. 25, 1999) (*no perm. app. filed*) (stating that "[a] trial court may, in its discretion, refuse to consider a request for relief by a party in contempt."); *State ex. rel. Hall v. Norrod*, No. 01-A-01-9201-JV00008, 1992 WL 312619, at *2 (Tenn. Ct. App. Oct. 30, 1992) (*no perm. app. filed*) (stating that trial courts are not forbidden "to grant relief to a party whose conduct has been contemptuous.").

[4]Ms. Harris paid $4000.00 of the $8,139.00 judgment in 1993. At the time of trial, Ms. Harris still owed $4,139.00. The court entered an order reviving the judgment, in the amount of $4139.00, against Ms. Harris on January 3, 2000.

Court commented that the effect of its ruling was not to wipe out the amounts owed by Ms. Oliver to Mr. Oczkowicz but, rather, that Mr. Oczkowicz would "have to resort to the ordinary legal processes to collect the debt rather than taking it out of his child support obligation." *Id.* at *2.

This Court relied upon *Oliver* when we reached our decision in *Hayes v. Hayes*, W1999-00445-COA-R3-CV, 2000 WL 987331 (Tenn. Ct. App. July 12, 2000) (*no perm. app. filed*).   In *Hayes*, Ms. Hayes (Ms. Beuerlein) executed a promissory note naming Mr. Hayes as the payee. *Id.* at *5.  Mr. Hayes sued to collect the entire amount due on the note, but the trial court arranged a payment schedule where Mr. Hayes would pay a portion of his child support payment to Ms. Beuerlein each month with the remainder of the child support obligation set-off against Ms. Beuerlein's debt under the promissory note.  *Id.*  We reversed the trial court's decision concluding that

> consistent with this Court's ruling in *Oliver*, the trial court should not have ordered that [a portion] of Mr. Hayes' monthly child support obligation should be applied as a set off against Ms. Beuerlein's indebtedness to Mr. Hayes.  Rather, the court should have granted a judgment to Mr. Hayes in the full amount owed to Mr. Hayes by Ms. Beuerlein under the promissory note.

*Id.* at *6.

Applying our decisions in *Oliver* and in *Hayes*, we hold that the trial court did not err in refusing to allow Mr. Harris to set-off the child support arrearage with the judgment against Ms. Harris.

In his third issue, Mr. Harris argues that the trial court erred in calculating the child support in arrears because the trial court failed to give proper credit for Social Security payments made to the child on Mr. Harris's behalf.  Mr. Harris has the burden to illustrate that the trial court erred in calculating the amount of child support in arrearage.  As Mr. Harris failed to carry this burden, we conclude that the trial court did not err in calculating the child support arrearage.

Finally, Mr. Harris argues that the trial court violated the Equal Protection Clause of the United States Constitution as applied to the states through the Fourteenth Amendment.  We find Mr. Harris's equal protection argument without merit.

Ms. Harris requests that we order Mr. Harris to pay her attorney's fees.  The determination of whether to award attorney's fees for an appeal is within our discretion.[5]  Tenn. Code Ann. § 36-5-103 (2000).  Attorney's fees are appropriate in child support cases when one parent must appeal or litigate a case on behalf of a minor child in order to secure that child's financial well being.  *Graham*

---

[5]Section 36-5-103(c) of the Tennessee Code states that "[t]he plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for . . . child support . . . in the discretion of such court."  (2000).

*v. Graham*, 204 S.W. 987, 989 (Tenn. 1918); ***Ragan v. Ragan***, 858 S.W.2d 332, 333-34 (Tenn. Ct. App. 1993). In the present case, it is clear that Ms. Harris had to resort to the courts in order to enforce Mr. Harris's child support obligations. Therefore, we hold that the request for attorney's fees is proper and remand the cause to the trial court to set a reasonable fee for the services rendered by counsel on appeal.

Accordingly, we affirm the judgment of the trial court and remand the cause for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellant, John W. Harris, Jr., for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE